[L. A. No. 6967. In Bank.—July 5, 1923.]

## F. H. LEMON, Respondent, v. THE FIRST NATIONAL BANK OF PASADENA (a Corporation), Appellant.

[1] CONTRACTS — PLEADING — AMENDMENTS. — It is not error for the court at the close of a trial, in an action against a bank to recover certain money claimed by the plaintiff to be owed by it to him by reason of its failure to obtain for him a certain amount of Russian rubles which it had agreed to purchase for him, to permit plaintiff to amend his complaint by adding two counts to conform to the proofs, where all the counts in the complaint as amended related to the same transaction and applied for the same relief.

[2] ID.—MEETING OF MINDS—PLEADING—PROOF.—In such a case it was error for the court to find that the minds of the parties had never met regarding the substance of the transaction between them, and that in the absence of such a meeting of the minds of the parties there was no valid agreement between them and hence that the plaintiff was entitled to recover back his money, where there was neither pleading nor proof to support it, and the evidence as a whole showed that the transaction was one whereby the bank undertook as plaintiff's agent to invest for him a specific sum of money at the then current rate of exchange and purchase a stated number of rubles, which agreement the bank carried out.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

Porter & Sutton for Appellant.

Haas & Dunnigan for Respondent.

RICHARDS, J., *pro tem.*—The plaintiff in this action sought to recover from the defendant herein the sum of $1,962, with interest from September 14, 1916. His first amended complaint consisted of two counts, in the first of which he alleged that on the fourteenth day of September, 1916, he entered into an oral contract with the defendant, whereby the latter agreed that for and in consideration of the sum of $1,962 then and there paid by plaintiff it would deliver to plaintiff 6,000 Russian rubles, Petrograd, to wit, 6,000 rubles of Russian money; that said defendant then

and there gave to plaintiff the· following memorandum in writing of said transaction, viz.:

"The First National Bank of Pasadena, California.

"September 14, 1916.

"Mr. F. H. Lemon,

"815 No. Holliston St.,

"Pasadena, California.

"Dear Sir:—

"This is to certify that we have purchased and have had forwarded for your account the sum of 6000 rubles, Petrograd, which amount will be held for you against further instructions.  We have charged your account as instructed $1,962.00 to cover.

"Yours truly,

"JACK MILLER, Cashier."

The plaintiff then proceeds to allege that within a few days thereafter he was informed by said defendant through its said cashier that the defendant had purchased said rubles for plaintiff at $.324 each, charging as its commission therefor the sum of $18; that at the time of said transaction said rubles were reasonably worth the sum of $1,962 and so continued to be for a brief period, viz., for about one month thereafter; that at a later period the defendant informed plaintiff that it was unable to obtain said rubles by reason of the fact that there was no longer a recognized form of government in Russia; that thereafter and on or about October 3, 1919, plaintiff made an oral demand upon defendant for the return of said money so paid by him to it, but the said defendant failed and refused to comply with said demand; that thereafter and on December 19, 1919, said plaintiff gave notice of rescission and cancellation of said agreement, based upon the ground that the market value of said rubles had depreciated since the date of said agreement for their purchase, and on the further ground of the defendant's delay in the delivery of the same to the plaintiff.  A copy of said notice of rescission is appended to said complaint.

The second count in plaintiff's said first amended complaint contains a recital in substance of the same transaction, but is based upon an alleged agency of the defendant for the plaintiff in making the purchase of said rubles and upon the failure and neglect of the defendant to com-

ply with the terms of its said agency by making the purchase of said rubles within a reasonable time, by which said failure and neglect on the part of said defendant the plaintiff had suffered damages in the sum of $1,962.

The answer of the defendant, while denying the existence of said contract, written or oral, to deliver to plaintiff 6,000 rubles of Russian money, admits the making and delivery to the plaintiff of the memorandum of the transaction as above set forth, except as to the signature thereof, which it avers was by another of its officials, and denies that it has failed in any respect to perform the obligations of its agreement as embodied in said written memorandum, and avers that the transaction between the plaintiff and the defendant as evidenced thereby was one for the purchase by it for the plaintiff of Russian exchange, to wit, a draft on Petrograd for 6,000 Russian rubles, and that in pursuance thereof it purchased from the Anglo & London Paris National Bank of San Francisco Russian exchange for 6,000 rubles, receiving from the latter a certificate showing such purchase in the following form:

"The Anglo & London Paris National Bank, of San Francisco.

"Sept. 12th, 1916.

"This is to certify that we have purchased and forwarded for your account the sum of Six thousand (R. 6,000) Roubles, to our correspondent in Petrograd. This receipt is returnable against issue of formal certificate of deposit upon receipt of advice from our correspondents that same has been collected and placed to our credit.

"THE ANGLO & LONDON PARIS NAT'L BANK.,

"H. CHOYNSKI,

"Asst. Cashier."

The defendant further avers that shortly thereafter and in pursuance of the foregoing document it received the following further certificate from the Anglo & London Paris National Bank of San Francisco, to wit:

"The Anglo & London Paris National Bank of San Francisco.

"December 18, 1916.

"Mr. F. H. Lemon has deposited with this bank Rubles Six thousand (6,000) held at the Russian Commercial and

Industrial Bank, Petrograd, and payable on demand by our check on the Russian Commercial and Industrial Bank, Petrograd.

> "THE ANGLO AND LONDON PARIS NATIONAL BANK.
> "BY HARRY CHOYNSKI,
> "Assistant Cashier."

It then alleges that the defendant fully informed plaintiff of the receipt of said certificate and offered to deliver the same to him, who made no objection to the same, but requested said defendant to hold the same for the time being for plaintiff, which the defendant has ever since done, and that it now holds and offers to deliver to plaintiff said certificate. The answer admits the plaintiff's alleged acts in his attempted rescission of said agreement, but denies that he was at any time entitled to rescind the same. The defendant further pleads that as to both alleged causes of action they are barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure and also by subdivision 1 of section 1691 of the Civil Code, by reason of the plaintiff's laches in the institution of said actions. The cause came to trial upon the issues thus framed.

The plaintiff on his own behalf and the defendant through its official who conducted the transaction each gave testimony as to the oral conference leading up to the investment of the plaintiff's money in Russian rubles. These witnesses do not, in the main, disagree as to the details of that oral conference, except that the witness for the defendant asserts, and the plaintiff denies, that the term "exchange" was used during said conference as indicating the nature of the transaction to be entered into by the defendant on the plaintiff's behalf. In the course of the trial there was also some disagreement between these witnesses as to whether the plaintiff was shown the certificate received by the defendant from the Anglo & London Paris National Bank, but there is substantially no dispute as to the fact that the defendant had proceeded to consummate some transaction in Russian rubles for the plaintiff's benefit and that the plaintiff understood this to be the fact and from time to time made inquiries as to the varying value of rubles down to the time in the year 1919 when the value of Russian rubles fell to practically nothing due to the collapse of Russia. It was then for the first time that the plaintiff began making

inquiries as to the nature of the transaction through the San Francisco bank, which resulted in his attempted rescission of the contract and transaction between himself and the defendant, and in this action for the recovery of the money originally paid by him on account thereof. At the conclusion of the trial the plaintiff asked and was granted leave to file a further amended complaint for the avowed purpose of conforming the pleadings with the proofs; and in accordance with such leave he presently served and filed his second amended complaint, embracing four counts, the first two of which embodied in identical form the averments of the two counts in the former amended complaint, the third of which was in the form of a common count for money had and received, and the fourth of which was a substantial repetition of the first two counts with an added averment alleging the plaintiff's understanding or interpretation of the agreement between the parties. It was stipulated between the parties that no answer need be filed to this second amended complaint, and in fact no answer was filed thereto. The cause being submitted for decision, the trial court presently filed its findings of fact and conclusions of law in the case, wherein the court found "that heretofore, to wit, on the fourteenth day of September, 1916, said plaintiff F. H. Lemon employed said defendant The First National Bank of Pasadena, California, a corporation, as a broker for a consideration, to wit: the sum of Eighteen ($18.00) Dollars to be paid said defendant to purchase for said plaintiff 6,000 Russian rubles, Petrograd, at and for the sum of $.324 each, to wit, One Thousand Eight Hundred Forty-four Dollars; that the said plaintiff then and there understood by said terms '6000 Russian Rubles, Petrograd' that said Russian rubles would be represented by currency of the Russian Empire, or bond or bonds of the Russian Empire equal to the value of 6000 Russian rubles, to wit, Russian money; that said defendant meant and intended thereby to procure for said plaintiff exchange on some Russian bank or banking institution for 6000 Russian rubles, to wit: Russian money; that said plaintiff did not state to said defendant the fact that said plaintiff understood by said terms that he was to receive currency of the Russian Empire or a bond or bonds of the Russian Empire, equal to the value of 6000 Russian rubles; that said defend-

ant did not state to said plaintiff that it meant and intended to procure for plaintiff exchange on some bank or banking institution in Russia for 6000 rubles; that the minds of plaintiff and the officers representing said defendant corporation in said transaction did not meet relative to the meaning of said term '6000 Russian Rubles, Petrograd,' and did not meet relative to the subject matter of said transaction; that said plaintiff paid to said defendant the said $1962.00 under belief that he the said plaintiff, would procure through the said defendant acting as the broker of said plaintiff currency of the Russian Empire for said $1844.00, or a bond or bonds of the Russian Empire equal to the value of said 6000 Russian rubles, for the said $1844.00. That the defendant did not procure for said plaintiff or deliver to said plaintiff at any time, or offer or tender to said plaintiff currency of the Russian Empire equal to said 6000 Russian rubles, or a bond or bonds of the Russian Empire equal to said 6000 Russian rubles, or the value thereof. That the said defendant did not procure for the said plaintiff or tender to the said plaintiff exchange on any bank or banking institution in, or doing business in the Russian Empire, or any exchange whatsoever for said 6000 rubles, or any rubles." After making the foregoing finding the trial court proceeded to find that the defendant did, on September 14, 1916, make and deliver to the plaintiff the memorandum first above set forth herein, but it further found that as to the transactions between the defendant and the Anglo & London Paris National Bank of San Francisco the plaintiff never authorized nor directed such transaction and that the defendant never delivered to the plaintiff the certificate issued on December 18, 1916, by said San Francisco institution showing that the transaction in Russian rubles exchange had been consummated. The court does not find that the plaintiff was not substantially informed by the defendant as to the consummation of said transaction in the manner indicated by said certificate or of the fact that it was holding the same subject to the plaintiff's direction during the several years that the plaintiff allowed to pass before repudiating said transaction. As conclusions of law the court found that the plaintiff was entitled to recover from the defendant the sum of $1,962, with interest thereon from September 14, 1916, at the legal rate,

and that his cause of action therefor was not barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure nor by subdivision 1 of section 1691 of the Civil Code. Judgment was accordingly ordered and entered in the plaintiff's favor, and from such judgment the defendant prosecutes this appeal.

[1]    The first contention of the appellant is that the trial court was in error in granting the plaintiff permission to file a further amended complaint at the close of the trial in order to make the pleadings conform to the proofs. This contention is predicated upon the appellant's claim that the plaintiff under said permission has filed an amended complaint containing two additional counts, in the fourth or last of which he has a new and distinct cause of action. The record does not, however, support this claim. All four counts in the plaintiff's last amended complaint relate to the same transaction and apply for the same relief. As to the two added counts the first of these is in form an action under the common count for money had and received, while the second of these is a restatement of the plaintiff's cause of action as set forth in the first count of his first amended complaint with an added averment setting forth the plaintiff's interpretation or understanding of the agreement between the parties, the terms and conditions of which it is alleged the defendant violated. The addition of these two latter counts may not have been necessary, but it does not appear that the appellant was prejudiced by their insertion in the complaint upon which the plaintiff had proceeded to trial. The point therefore has no merit.

[2]    The appellant's next contention is that the trial court was in error in its finding that the minds of the parties had never met regarding the substance of the transaction between them, and that in the absence of such a meeting of the minds of the parties there was no valid agreement between them and hence that the plaintiff was entitled to recover back his money. As to this finding of the trial court the record discloses neither pleading nor proof to support it. The plaintiff has not in any of the counts of his complaint as amended, either before or after the trial, pleaded mistake of either law or fact as a ground for avoiding his agreement, nor does he seek to avoid his said agreement upon any such ground. It is true that he un-

dertakes to set forth in the first, second, and fourth counts of his complaint his understanding or interpretation of the agreement between himself and the defendant which, as he claims, the defendant violated, but if the proven facts in the case do not justify or support said interpretation, but rather negative it, the plaintiff would not be entitled to relief because of such misunderstanding of the terms and effect of his agreement in the absence of a showing by both pleading and proof that his consent to it had been obtained through that form of fraud defined and treated in sections 1565 to 1578, inclusive, of the Civil Code. In the absence of such showing the rules for the interpretation of contracts are those set forth in title three of the Civil Code. Had the trial court applied these ordinary and familiar rules to the transaction between these parties upon which this action is founded, it would not have found it necessary to make said finding, which has neither pleading nor proof to support it.

As to the facts of this case, rightly interpreted, there is no material dispute. The plaintiff was a customer and depositor of the First National Bank of Pasadena, the defendant herein. On or about September 12, 1916, he entered said bank and there held an oral conference with its cashier. The purport of that conference was that the plaintiff desired to invest some of the money he then had on deposit in said bank in some safe securities. He was advised by said official of the bank to buy Russian rubles, and after some talk about the state of things in Russia he instructed the bank to make the investment for him. What the bank immediately proceeded to do as a result of that conference serves to indicate what the understanding of the parties was as to what it should do in conformity with the plaintiff's said direction, since it immediately instructed its correspondent, the Anglo & London Paris National Bank of San Francisco, having as its correspondent the Russian Commercial and Industrial Bank, Petrograd, Russia, to invest for said plaintiff the requisite sum of money at the then current rate of exchange and purchase 6,000 Russian rubles. In response to this instruction the said San Francisco bank transmitted to said defendant its above-quoted certificate under date of September 12, 1916, showing the nature of the transaction in so far as it was concerned. Upon the receipt of said

certificate from its San Francisco correspondent the defendant executed and delivered to the plaintiff its own written memorandum of the transaction under date of September 14, 1916, which is also above quoted, and of which the plaintiff acknowledges the receipt. These written documents prevail over the uncertain recollection of the parties as to oral understandings and fix the nature of the transaction to be that of an investment in exchange. No other interpretation is in fact conceivable or consistent with the conduct of the parties throughout. The ruble is the gold monetary unit of Russia, worth at par about 51.5 cents. It would be valueless to use as money in Pasadena or to invest in as money for use there or elsewhere outside of Russia itself. The sole desirability of the Russian ruble for American investors in 1916 consisted in the fact that its exchange value in the money markets of the world was then 32.4 cents and that its said exchange value was fluctuating with the fortunes of Russia in the then impending European war. The fortunes of Russia were at the peak of their expectancy in September, 1916, as the undisputed evidence herein discloses, and the Pasadena bank, on its own behalf and on behalf of such of its customers as were seeking profitable investments, was dealing in Russian exchange. The use of the word "Petrograd," then the political capital and financial center of the Russian empire, in these several documents, is significant as indicating the place upon which bills of exchange were to be drawn, just as the use of the words "London" or "Paris" or "Vienna" are similarly significant according to common knowledge in similar dealings in exchange. The document received by the plaintiff from the defendant on September 14, 1916, informed the plaintiff in unmistakable terms that the proposed transaction in Russian rubles exchange on Petrograd had been consummated and his account charged with the sum of $1,962 to cover the investment. The testimony of the plaintiff and the cashier of the defendant who conducted the transaction is in entire accord as to what occurred upon that and later occasions with relation to the investment. The plaintiff inquired as to the rate at which his investment in Russian rubles, Petrograd, had been made, and was informed that it was 32.4 cents, and that he should put his certificate away in his box and forget it till the war was over.

He says that he inquired for the rubles, but it is too great a tax upon credence to believe that the plaintiff expected the bank to have at hand 6,000 Russian rubles which he had ordered purchased in Petrograd but two or three days before. From time to time thereafter for three years the plaintiff made occasional inquiries of the various bank officials as to what rubles were worth. In the meantime the bank, as his agent, had further consummated the transaction through the receipt in December, 1916, of a formal certificate of deposit from its San Francisco correspondent, which is also above set forth, showing the plaintiff was credited with a deposit of 6,000 Russian rubles held at the Russian Commercial and Industrial Bank, Petrograd, and payable on demand. The evidence is somewhat conflicting as to whether this certificate of deposit was ever actually inspected by the plaintiff, but there is no dispute as to the fact that the defendant received and held this certificate of deposit as the plaintiff's agent in the transaction and subject at all times to his instructions; that it tendered the same to the plaintiff in 1919 when he made, for the first time, a demand for the return of his money; and that it has ever since held and still holds the same, subject to the plaintiff's order. It is true that the plaintiff testified that from time to time during these years he requested the delivery of his Russian rubles to him, but it is also true that the two documents above referred to, one of which he held and the other of which his bank and agent in the transaction held for him, afforded the most immediate and only practical means of obtaining possession of 6,000 Russian rubles, viz., converting said documents into the form of a draft upon the Russian bank for 6,000 rubles in identical form or in the form of American money at the then ruling rate of exchange. Taking, therefore, the plaintiff's testimony as to his understanding of the transaction at its utmost value, it amounts to nothing more than that he had invested his money in 6,000 Russian rubles, and that whether he had received or been entitled to receive them in the actual form of Russian money or in a certificate of deposit convertible into Russian or American money on demand, the status of his investment would be precisely the same, and his Russian rubles, whether in the hands of himself or his banking agent, as actual money, or in the form of the certificate of deposit

which had been issued to him, would be worth no more to him than their exchange value in the money markets of the world. The plaintiff at one point in his testimony speaks of his expectation that his money would be invested in some other form of Russian securities, but he offers no evidence showing either that the defendant was dealing in any other form of Russian securities or that any such investment was discussed or that there were actually in existence in Pasadena or elsewhere any other form of Russian securities available for investment or that any other investment was in the contemplation of the parties than that in Russian rubles which was actually made. Viewing the testimony in the case as a whole, the conclusion is irresistible that the transaction between the parties to this action was in the nature of an investment in Russian exchange; that the plaintiff at all times since the making of said investment was in a position, through the documents held by him or the defendant as his agent, to have taken advantage of any rise in the money market value of Russian rubles which would have rendered his investment profitable, and that having this advantage in his favor he was also at all times subjected to the disadvantage and liability of a further depreciation in the money market value of Russian rubles; and that having suffered the loss of his money through such depreciation of Russian rubles to the point of a negligible valuation, he is endeavoring through this action to cast his loss upon the defendant, who was merely acting as his agent in good faith in the transaction. The finding of the trial court being predicated upon a misconception of the issues and being thus at variance with the proofs in the case as thus reviewed and interpreted, its judgment based upon such findings cannot be upheld.

We do not deem it necessary to discuss the question as to the effect of the defendant's plea of the bar of the statute of limitations.

Judgment reversed.

Lawlor, J., Lennon, J., Waste, J., Kerrigan, J., Myers, J., and Wilbur, C. J., concurred.